COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



CHARLENE DOMINGUEZ,
 
                     Appellant,

v.

JOSE D. CASTANEDA,

                     Appellee.

§

§

§

§

§

No. 08-04-00051-CV

Appeal from the

327th District Court

of El Paso County, Texas

(TC# 2002-3378)




O P I N I O N

           This is an appeal filed by Appellant, Charlene Dominguez, complaining of the trial
court’s entry of judgment against her and in favor of Appellee below. Appellant had filed
her Original Petition for Injunctive Relief, Declaratory Relief and Damages seeking to
prevent foreclosure of a lien on property she claimed as her homestead. The trial court
entered a Temporary Restraining Order stopping the foreclosure sale. Appellee filed an
Original Answer and claim for set-off asserting a claim under the note. After a trial to the
court, judgment was entered in favor of Appellee. Findings of Fact and Conclusions of Law
were filed. Appellant did not file Requested Findings of Fact or Conclusions of Law and did
not object to the Findings as filed. Appellant timely filed a Notice of Appeal. For the reasons
stated, we affirm.
I. SUMMARY OF THE EVIDENCE
           The underlying factual dispute arises out of a financial transaction that originated with
a loan, now disputed, between the parties. Appellant, due to her impending incarceration in
a federal penitentiary, signed a general power of attorney in favor of her husband, Reydesel
Dominguez, allowing him to handle Appellant’s business and personal affairs. This power
of attorney included the authority to operate and make all decisions related to her personal
and business affairs as well as specific authority to act regarding the management of the
business owned by Appellant known as The Tap Bar and Restaurant located in El Paso,
Texas. Appellant was incarcerated sometime in mid-November 1996. Shortly thereafter, on
or about November 20, 1996, Jose Castaneda, entered into a loan transaction where he loaned
$25,000 to Mr. Dominguez for a period of 30 days. Mr. Castaneda prepared a Deed of Trust
as security for the $25,000 loan encumbering property located at 4921 Garry Owen, a home
owned and occupied by Charlene Dominguez’s father, Charles Soule. Mr. Castaneda
testified that Mr. Dominquez represented that he and Appellant owned the home and resided
in another house located next door to the Garry Owen property at 1603 St. John. The original
agreement provided that the loan would be repaid in 30 days, by December 20, 1996. In the
event that the loan was not repaid, Appellee would file the Deed of Trust establishing a lien
on the property in question. We note that the entire agreement between the parties appears
to be contained within the terms of the Deed of Trust and no Promissory Note or other
written document reflecting the terms or conditions of the debt is included in the record. We
also note that the Deed of Trust contains standard clauses regarding representations of the
borrower’s ownership interest. The debt was not paid on December 20, 1996 and Appellee
filed the Deed of Trust in the County Clerk’s office on December 31,1996.
           In January of 1997, Appellant’s father, the owner of the Garry Owen property, died
and left the Garry Owen property to Appellant and Appellant’s brother pursuant to Mr.
Soule’s will. Appellant acquired full title to the property on November 19, 1997. After her
release from prison in late 1997, Appellant and her husband moved into the Garry Owen
property. After her release from prison, Appellant and Reydesel Dominguez went to see Mr.
Castaneda at his office and discussed the loan agreement. Appellee testified that Appellant
acknowledged the obligation and reflected a desire to pay the note. The record contains two
receipts, dated June 22, 1998 and September 28, 1998 reflecting payments made on the note. 
The receipts reflect Reydesel Dominguez as the payor of the two partial payments.
           In November of 2000, Appellant filed bankruptcy in federal court under Chapter 13,
of the Federal Bankruptcy Code. Appellant included the $25,000 obligation owed to
Appellee as a scheduled debt in her Chapter 13 filing. Appellant testified that she filed the
schedule which included the $25,000 obligation but checked the “disputed” box with regard
to this debt. At trial, she also testified that she did not intend to pay the debt but had been
instructed to list all her debts in the schedule. Appellant did not make any payments under
the plan and the bankruptcy was eventually dismissed.
           On cross-examination, Appellee’s attorney inquired of Appellant about the validity
of the $25,000 obligation and Appellant testified that she did not owe Appellee any of the
money. Appellee’s attorney used Appellant’s deposition for impeachment purposes and
presented Appellant’s prior deposition testimony as evidence of her acknowledgment of the
debt. During her deposition testimony, taken on June 11, 2003, Appellee’s attorney asked
Appellant about the $25,000 debt. Her deposition testimony reflected that Appellant stated
she did not “deny it” (the debt) and that she had “tried to pay him, but I’m unable to pay
him.” The deposition continued with Appellant’s response to a question regarding the
validity of the lien, explaining her position in the lawsuit by stating, “And I didn’t do that,
and I can’t pay the loan. I haven’t denied that it was there or what they did or what they tried
to do, but I can’t pay him. That’s what it boils down to. And I’m not going to sell the only
thing I have because of that because that’s the only thing I have.”
           Sometime in early 2002, Appellee received a notice that a tax suit had been filed
against the Garry Owen property. Appellee retained an attorney who sent demand letters to
Appellant requesting payment of the indebtedness and threatening foreclosure of the lien. 
Two letters and notices of foreclosure were sent, the first dated April 11, 2002 and the
second July 23, 2002. The second notice listed a foreclosure date of September 3, 2002. 
Appellant filed this lawsuit on August 29, 2002 and obtained a Temporary Restraining Order
halting the sale on August 30, 2002.
           A trial to the court was held on January 9, 2004. Appellant called herself and her
attorney as her only witnesses. Appellee presented himself and his former attorney during
his case-in-chief. The trial court entered judgment in favor of Appellee on January 30. 2004. II. ISSUES ON APPEAL
           Appellant presents six issues on appeal. Issue No. One challenges the trial court’s
Finding of Fact and Conclusion of Law with regard to the issue of whether the four-year
statute of limitations is a bar to the claim asserted by Appellee. We read this as a challenge
to the legal and factual sufficiency of the evidence to support the non-finding and conclusion
that the statute of limitations was a bar to Appellee’s claims, as a matter of law. We note that
Appellant does not specify the findings or conclusions challenged, but we read Issue No. One
as a complaint about Finding of Fact “F” and Conclusion of Law “A.”
           The trial court filed Findings of Fact and Conclusions of Law on January 30, 2004 
and made the following findings relevant to this issue:
           Finding of Fact “F” states:
CHARLENE DOMINGUEZ made only two payments to reduce the
$25,000.00 debt ($1,250.00 on June 22, 1998 and $1,875.00 on September 28,
1998), but continuously promised to pay same. These promises were
formalized when she filed Chapter 13 Bankruptcy proceedings on November
6, 2000, in which she submitted a written Chapter 13 Plan to pay all her
creditors, including CASTANEDA, whose $25,000.00 debt was listed in her
sworn schedule of assets she promised to pay. When she failed to make any
payments under the plan, the bankruptcy court dismissed the proceedings on
April 24, 2001.

           Conclusion of Law “A” stated:
Defendant is not barred by the Statute of Limitations which requires
foreclosures to be instituted within four years after maturity, Section 16.035,
Texas Civil and Practice Remedies Code, because a claim that has been barred
by the Statute of Limitations may be, and was here, revived by the debtor’s
subsequent acknowledgement of its justness, which occurred here when
Plaintiff included Defendant’s $25,000.00 loan in her Chapter 13 proceedings
and promised to pay same, as recognized in Sections 16.065 of the Texas Civil
Practice and Remedies Code.

           Issue No. Two raises the question of Appellant’s claim that the property subject to the
lien became her homestead, and therefore is exempt from foreclosure. Issue No. Two is also
presented as a general statement without a specific reference to the Findings of Fact or
Conclusions of Law being challenged. We read this as an argument that there is no or
insufficient evidence to support the Court’s Findings and Conclusions as follows, as a matter
of law. Again noting that Appellant had the burden of proof on the issue and the appropriate
review by this Court is whether there is any evidence contrary to the non-finding by the trial
court and whether the judgment is against the “great weight and preponderance of the
evidence.”
           Finding of Fact “B” stated:
On November 20, 1996, Defendant Jose D. Castaneda loaned $25,000.00 in
case to Plaintiff CHARLENE DOMINGUEZ through her attorney in fact
REYDESEL DOMINGUEZ and took as collateral a Deed of Trust lien on
property at 4921 Gary Owen, El Paso, Texas, which CASTANEDA was
advised was owned by CHARLENE DOMINGUEZ although not her
homestead, as she and her husband resided in the house next door at 1603 St.
John, El Paso, Texas.

           Conclusion of Law “D” stated:
Defendant is entitled to foreclose the lien granted to him by Plaintiff through
her attorney in fact prior to the time she could make any homestead claim with
respect thereto, and the fact that she was not the record title owner at the time
Defendant’s lien was created is cured by the doctrine of after acquired title,
which estops her from now denying ownership or the validity of Defendant’s
lien.

           As Appellant had the burden of proof to establish the claim that the property in
question was protected as her homestead, we read Appellant’s challenge as a challenge to the
“non-finding” of the homestead exemption as a defense to Appellee’s claim, as a matter of
law.
           Appellant’s Issue Nos. Three through Six present questions regarding whether 
Appellee’s conduct in connection with his letters sent in 2002 and his attempted foreclosure
of the property violated various statutes dealing with the collection of debts. Again, the
questions appear to complain of “non-findings” by the trial court.
III. STANDARD OF REVIEW
           In a bench trial, factual and legal sufficiency challenges to the trial court’s findings
of fact are reviewable under the same standards that are applied in reviewing evidence
supporting a jury’s verdict. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). We
review a trial court’s conclusions of law de novo. Austin Hardwoods, Inc. v. Vanden Berghe,
917 S.W.2d 320, 322 (Tex.App.--El Paso 1995, writ denied).
           A “no evidence” or legal insufficiency point is a question of law which challenges the
legal sufficiency of the evidence to support a particular fact finding. There are two separate
“no evidence” claims. When the party having the burden of proof suffers an unfavorable
finding,


 the point of error challenging the legal sufficiency of the evidence should be that
the fact or issue was established as “a matter of law.” When the party without the burden of
proof suffers an unfavorable finding, the challenge on appeal is one of “no evidence to
support the finding.” In re Estate of Livingston, 999 S.W.2d 874, 879 (Tex. App.--El Paso
1999, no pet.); see Creative Manufacturing, Inc. v. Unik, Inc., 726 S.W.2d 207, 210 (Tex.
App.--Fort Worth 1987, writ ref’d n.r.e.).
           When attacking the legal sufficiency of the evidence to support an adverse finding on
an issue for which he had the burden of proof, i.e., challenging the trial court’s finding as a
matter of law, the appellant must demonstrate on appeal that the evidence conclusively
established all the vital facts in support of the issue. In re Estate of Livingston, 999 S.W.2d
at 879; Sterner v. Marathon Oil Company, 767 S.W.2d 686, 690 (Tex. 1989); Kratz v. Exxon
Corp., 890 S.W.2d 899, 902 (Tex. App.--El Paso 1994, no writ); Chandler v. Chandler, 842
S.W.2d 829, 832 (Tex. App.--El Paso 1992, writ denied). A party attempting to overcome
an adverse fact finding as a matter of law must surmount two hurdles. In re Estate of
Livingston, 999 S.W.2d at 879; Sterner, 767 S.W.2d at 690. First, the record must be
examined for evidence that supports the finding, while ignoring all evidence to the contrary. 
In re Estate of Livingston, 999 S.W.2d at 879; Sterner, 767 S.W.2d at 690; Kratz, 890
S.W.2d at 902. Second, if there is no evidence to support the finding, then the entire record
must be examined to see if the contrary proposition is established as a matter of law. In re
Estate of Livingston, 999 S.W.2d at 879; Sterner, 767 S.W.2d at 690; Kratz, 890 S.W.2d at
902. Only if the contrary position is conclusively established will the point of error be
sustained. In re Estate of Livingston, 999 S.W.2d at 879-80; Kratz, 890 S.W.2d at 902; 
Chandler, 842 S.W.2d at 832.
           In reviewing a factual sufficiency point of error, the appeals court must weigh all of
the evidence in the record. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996). Findings of
fact may be overturned only if they are so against the great weight and preponderance of the
evidence as to be clearly wrong and unjust. Id. In that event, the appeals court must state
clearly why the finding is factually insufficient or so against the great weight and
preponderance as to be manifestly unjust. Id.
           An “insufficiency” point invokes a broader standard, requiring this Court to consider
all of the evidence and ascertain whether the evidence supporting the finding is so weak, or
the evidence to the contrary so overwhelming, that the finding should be set aside and a new
trial ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).
           When a party appeals from a nonjury trial, it must complain of specific findings and
conclusions of the trial court, because a general complaint against the trial court’s judgment
does not present a justiciable question. Fiduciary Mortgage Co. v. City Nat'l Bank, 762
S.W.2d 196, 204 (Tex.App.--Dallas 1988, writ denied). Accordingly, findings of fact and
conclusions of law are mandatory for a party to file to avoid the onerous presumptions that
apply in an appeal from a nonjury trial. When an Appellant does not request or file findings
and conclusions by the trial court, the appellate court presumes the trial court found all fact
questions in support of its judgment, and the reviewing court must affirm that judgment on
any legal theory finding support in the pleadings and evidence. Point Lookout West, Inc. v.
Whorton, 742 S.W.2d 277, 278 (Tex. 1987).
           If the Appellant does not challenge the trial court’s findings of fact when filed, these
facts are binding upon both the party and the appellate court. Wade v. Anderson, 602 S.W.2d
347, 349 (Tex.Civ.App.--Beaumont 1980, writ ref’d n.r.e.). Accordingly, it is incumbent for
the Appellant to attack the findings by appropriate legal and factual sufficiency points of
error. Lovejoy v. Lillie, 569 S.W.2d 501, 504 (Tex.Civ.App.--Tyler 1978, writ ref’d n.r.e.). 
In an appeal of a nonjury trial, findings are specifically and meaningfully tied to appropriate
standards of appellate review and are therefore truly beneficial to appellate review. See
Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 853 (Tex. 1992).
           Because Appellant had the burden of proof on the allegations against Appellee, the
court’s findings were against Appellant on each of these findings. As a result, the proper
point of error is that the court’s individual findings are against the “great weight and
preponderance of the evidence.” The “insufficient evidence” point of error is appropriate
only when the party without the burden of proof on an issue complains of the court’s
findings. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983); Calvert, “No Evidence”
and “Insufficient Evidence” Points of Error, 38 Texas L. Rev. 361 (1960).
           We do not, however, hold that this failure to frame the issues in the appropriate
manner is fatal to the appeal. Texas Rules of Appellate Procedure provide that “[t]he
statement of an issue or point will be treated as covering every subsidiary question that is
fairly included.” Tex. R. App. P. 38.1(e). As a result, we will consider the “insufficient
evidence” portion of the issue as an allegation that the trial court’s judgment is “against the
great weight and preponderance of the evidence.”
           Findings of fact entered in a case tried to the court have the same force and dignity
as a jury’s answers to jury questions. Anderson v. City of Seven Points, 806 S.W.2d 791, 794
(Tex. 1991). Findings of fact are the exclusive province of the trier of fact. Bellefonte
Underwriters Ins. Co. v. Brown, 704 S.W.2d 742, 744-45 (Tex. 1986). A court of appeals
cannot make findings of fact; it can only “unfind” facts. Tex. Nat’l Bank v. Karnes, 717
S.W.2d 901, 903 (Tex. 1986). Unchallenged findings of fact are binding unless the contrary
is established as a matter of law or there is no evidence to support the findings. McGalliard
v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986); Reliance Ins. Co. v. Denton Cent. Appraisal
Dist., 999 S.W.2d 626, 629 (Tex.App.--Fort Worth 1999, no pet.). The trial court’s findings
of fact are reviewable for legal and factual sufficiency of the evidence to support them by the
same standards that are applied in reviewing evidence supporting a jury’s answer. Zeptner
v. Zeptner, 111 S.W.3d 727, 734 (Tex.App.--Fort Worth 2003, no pet.); Ortiz, 917 S.W.2d
at 772; Catalina, 881 S.W.2d at 297.
           We do not have to give details of supporting evidence when upholding factual
sufficiency of the evidence underlying the trial court’s judgment. Zeptner, 111 S.W.3d at
735; see Ellis County State Bank v. Keever, 888 S.W.2d 790, 794 (Tex. 1994).
 

IV. DISCUSSION
           Appellant has presented six issues challenging the trial court’s specific findings with
regard to the obligations owed by Appellant to Appellee in connection with the $25,000 loan. 
Appellant’s first issue challenges the court’s findings regarding the applicability of the four-year statute of limitations and whether Appellant’s conduct revives the debt pursuant to Civil
Practice and Remedies Code Section 16.065. Because Appellant did not file Requested
Findings of Fact or Conclusions of Law and did not object to the Findings and Conclusions
as filed, we have limited avenues of review available. The findings and conclusions are
binding on us as the reviewing court and we can only overturn the trial court’s decision if
there is no evidence to support the judgment as a matter of law and the contrary position is
conclusively established.
           We are convinced that the trial court’s findings regarding the statute of limitations and
the subsequent acknowledgment of the justness of the claim is supported by the limited
record presented. We note that the parties agree to the underlying facts establishing the
existence of the obligation related to the $25,000. The parties agree that Appellee loaned
Appellant, pursuant to a valid power of attorney in favor of Reydesel Dominguez, $25,000.
Mr. Dominguez signed a Deed of Trust evidencing the debt and agreeing to repay the money
on December 20, 1996. Appellant now contends that she is not obligated to repay the debt
because the statute of limitations is a bar to Appellee’s claim and the property is now
protected as her homstead and not subject to foreclosure under the lien.
           Appellant is correct that Section 16.035(b) of the Texas Civil Practice and Remedies
Code establishes the statute of limitations for foreclosing on a lien related to real property
is four years. Section 16.035(b) provides, that “A sale of real property under a power of sale
in a mortgage or deed of trust that creates a real property lien must be made not later than
four years after the day the cause of action accrues.” Tex. Civ. Prac. & Rem. Code Ann. §
16.035(b) (Vernon 2002). We also agree that the parties to a real property transaction may
suspend the running of the four-year limitations period by filing a written agreement as
provided by Section 16.036 of the Texas Civil Practice and Remedies Code.
           § 16.036 Extension of Real Property Lien
(a) The party or parties primarily liable for a debt or obligation secured by a
real property lien, as that term is defined in Section 16.035, may suspend the
running of the four-year limitations period for real property liens through a
written extension agreement as provided by this section.
(b) The limitations period is suspended and the lien remains in effect for four
years after the extended maturity date of the debt or obligation if the extension
agreement is:
(1) signed and acknowledged as provided by law for a deed conveying
real property; and
(2) filed for record in the county clerk's office of the county where the
real property is located.
(c) The parties may continue to extend the lien by entering, acknowledging,
and recording additional extension agreements.
(d) The maturity date stated in the original instrument or in the date of the
recorded renewal and extension is conclusive evidence of the maturity date of
the debt or obligation.
(e) The limitations period under this section is not affected by Section 3.118,
Business & Commerce Code. 

Tex. Civ. Prac. & Rem. Code Ann. § 16.036 (Vernon 2002).

            We note, however, that this section of the Texas Civil Practice and Remedies Code
has little applicability to this case because there is no evidence that the parties complied with
the specific filing requirements of any section. This section should be reviewed for what
should be done to extend a lien but provides no guidance here because no extension
agreement was prepared or filed.
           We recognize that Section 16.065 of the Texas Civil Practice and Remedies Code,
however, is applicable to the claim before us. Section 16.065 provides for acknowledgment
of a claim by a debtor as follows:
An acknowledgment of the justness of a claim that appears to be barred by
limitations is not admissible in evidence to defeat the law of limitations if
made after the time that the claim is due unless the acknowledgment is in
writing and is signed by the party to be charged.

Tex. Civ. Prac. & Rem. Code Ann. § 16.065 (Vernon 1997).

           We have reviewed the entire reporter’s record and find there was ample evidence to
support the court’s judgment and the findings of fact are not against the great weight and
preponderance of the evidence.
           The trial court specifically found that Appellant made two payments on the $25,000
obligation during 1998 and that she continuously promised to pay the debt. The trial court
also found that the promise to pay and acknowledgment of the debt was formalized by
Appellant’s Chapter 13 Bankruptcy filing. The bankruptcy filing lists the debt in the secured
creditors schedule and is signed by the Appellant. While we do not reach the issue of
whether the bankruptcy filing alone complies with Section16.036, we agree with the trial
court that the filing was a promise to pay, albeit in compliance with the limitations of the
Bankruptcy Code, in writing and signed by the Appellant as required by Section16.065. The
bankruptcy case was dismissed on April 24, 2001 which triggered a new obligation to pay
the debt.
           We also consider the fact that the parties before the Court today are the original parties
to the agreement. We recognize the significance of the fact that no third-party innocent
purchaser of the property is involved. We do not know the factual reasons for Appellee’s
patience in the collection of this debt, but we agree with the trial court that there is ample
evidence to support a finding that Appellant’s conduct was an acknowledgment of the debt
and a promise to pay that was revised and acknowledged several years after the original due
date.
           Appellant did not object to the Findings of Fact as filed nor inform the court of any
claimed deficiencies or error. Further, Appellant did not file Requested Findings of Fact or
Conclusions of Law. A party has an obligation to point out deficiencies in the filed findings
of fact or conclusions of law or any complaints regarding same are waived. Because
Appellant did not do so, and because there is ample evidence to support the trial court’s
findings, we hold that Appellant’s Issue No. One is overruled.
           Turning to Appellant’s Issue No. Two, we consider Appellant’s argument that her
claim of the homestead exemption bars Appellee’s claim.
           The Texas Constitution addresses the issue of homesteads and provides the following
protection:
Sec. 50. (a) The homestead of a family, or of a single adult person, shall be,
and is hereby protected from forced sale, for the payment of all debts except
for:
(1) the purchase money thereof, or a part of such purchase money;
(2) the taxes due thereon;
(3) an owelty of partition imposed against the entirety of the property
by a court order or by a written agreement of the parties to the partition,
including a debt of one spouse in favor of the other spouse resulting from a
division or an award of a family homestead in a divorce proceeding;
(4) the refinance of a lien against a homestead, including a federal tax
lien resulting from the tax debt of both spouses, if the homestead is a family
homestead, or from the tax debt of the owner;
(5) work and material used in constructing new improvements thereon,
if contracted for in writing, or work and material used to repair or renovate
existing improvements thereon if:
. . .
(6) an extension of credit that:
                      (A) is secured by a voluntary lien on the homestead created
under a written agreement with the consent of each owner and
each owner’s spouse;
. . .
                      (7) a reverse mortgage; or
(8) the conversion and refinance of a personal property lien secured by
a manufactured home to a lien on real property, including the refinance of the
purchase price of the manufactured home, the cost of installing the
manufactured home on the real property, and the refinance of the purchase
price of the real property.
. . .
(d) A purchaser or lender for value without actual knowledge may
conclusively rely on an affidavit that designates other property as the
homestead of the affiant and that states that the property to be conveyed or
encumbered is not the homestead of the affiant.

Tex. Const. art. XVI, § 50(a)(d).

           The homestead interest is a legal interest created by the constitution that provides
prophylactic protection from all but the three types of constitutionally permitted liens against
homesteads. Sanchez v. Telles, 960 S.W.2d 762, 769 (Tex.App.--El Paso 1997, writ denied);
Heggen v. Pemelton, 836 S.W.2d 145, 148 (Tex. 1992). This interest, unlike the right of
reimbursement, gives protective legal security rather than vested economic rights. Sanchez,
960 S.W.2d at 769; Heggen, 836 S.W.2d at 148. In Texas, the homestead right constitutes
an estate in land. Sanchez, 960 S.W.2d at 769; Laster v. First Huntsville Properties Co., 826
S.W.2d 125, 129 (Tex. 1991). This estate is analogous to a life tenancy, with the holder of
the homestead right possessing the rights similar to those of a life tenant for so long as the
property retains its homestead character. Sanchez, 960 S.W.2d at 769; Laster, 826 S.W.2d
at 129, citing Fiew v. Qualtrough, 624 S.W.2d 335, 337 (Tex.App.--Corpus Christi 1981,
writ ref’d n.r.e.); Sparks v. Robertson, 203 S.W.2d 622, 623 (Tex.Civ.App.--Austin 1947,
writ ref’d). Although the homestead estate is not identical to a life estate because one’s
homestead rights can be lost through abandonment, “it may be said that the homestead laws
have the effect of reducing the underlying ownership rights in a homestead property to
something akin to remainder interests and vesting in each spouse an interest akin to an
undivided life estate in the property.” Sanchez, 960 S.W.2d at 769; Laster, 826 S.W.2d at
129, citing United States v. Rodgers, 461 U.S. 677, 686, 103 S.Ct. 2132, 2138, 76 L.Ed.2d
236 (1983).
           The Texas Property Code also provides for the designation of a homestead as follows: 
(c) Except as provided by Subsection (e) or Subchapter B, to designate
property as a homestead, a person or persons, as applicable, must make the
designation in an instrument that is signed and acknowledged or proved in the
manner required for the recording of other instruments. The person or persons
must file the designation with the county clerk of the county in which all or
part of the property is located. The clerk shall record the designation in the
county deed records. The designation must contain: 
(1) a description sufficient to identify the property designated; 
(2) a statement by the person or persons who executed the instrument that the
property is designated as the homestead of the person’s family or as the
homestead of a single adult person not otherwise entitled to a homestead;
(3) the name of the current record title holder of the property; and 
(4) for a rural homestead, the number of acres designated and, if there is more
than one survey, the number of acres in each. 

Tex. Prop. Code Ann. § 41.005(c) (Vernon 2000).
           Homestead rights have their origin in constitutional and statutory provisions and not
in the common law. Sanchez, 960 S.W.2d at 769; Gann v. Montgomery, 210 S.W.2d 255,
257-58 (Tex.Civ.App.--Fort Worth 1948, writ ref’d n.r.e.), citing 40 C.J.S. Homesteads §
2. There are no exemptions except those provided by law. Sanchez, 960 S.W.2d at 769;
Gann, 210 S.W.2d at 258. The courts have always given a liberal construction to the
constitution and statutes to protect the homestead rights. Sanchez, 960 S.W.2d at 769; Gann,
210 S.W.2d at 258. It is clear however, that the courts cannot protect that which is not
homestead. Sanchez, 960 S.W.2d at 769; Gann, 210 S.W.2d at 258, citing Whiteman v.
Burkey, 115 Tex. 400, 282 S.W. 788 (1926).
            To establish homestead rights, the claimant must show a combination of both overt
acts of homestead usage and the intention on the part of the owner to claim the land as a
homestead. Sanchez, 960 S.W.2d at 770 (citations omitted). The party claiming the
homestead exemption has the burden of establishing the homestead character of the property. 
Id.; NCNB Texas Nat’l Bank v. Carpenter, 849 S.W.2d 875, 879 (Tex.App.--Fort Worth
1993, no writ). A subsequent purchaser of homestead property may assert the prior persons
homestead protection against a prior lienholder so long as there is no gap between the time
of homestead alienation and recordation of his title. Sanchez, 960 S.W.2d at 770; Lawrence
v. Lawrence, 911 S.W.2d 450, 452-53 (Tex.App.--Texarkana 1995, writ denied). No
estoppel can arise in favor of a lender or encumbrancer who has attempted to secure a lien
on homestead property that is in actual use and possession of the homestead claimant, based
solely upon declarations, whether written or oral, which state to the contrary. Sanchez, 960
S.W.2d at 770; Carpenter, 849 S.W.2d at 880; First Interstate Bank of Bedford v. Bland, 810
S.W.2d 277, 287 (Tex.App.--Fort Worth 1991, no writ). Moreover, when a homestead
claimant is in actual occupancy of his homestead, it will be deemed that a lender or
encumbrancer acted with knowledge of the occupant’s right to invoke the rule of homestead. 
Sanchez, 960 S.W.2d at 770; Carpenter, 849 S.W.2d at 880. Possession and use of land by
one who owns it and who resides upon it makes it the homestead in law and in fact. Sanchez,
960 S.W.2d at 770; Carpenter, 849 S.W.2d at 880. It must always be remembered that mere
ownership alone is insufficient to constitute premises of a homestead, Sanchez, 960 S.W.2d
at 770; Silvers v. Welch, 127 Tex. 58, 91 S.W.2d 686, 688 (1936); that merely residing in a
house over a length of time alone does not convert it into a homestead, Sanchez, 960 S.W.2d
at 770; Hilliard v. Home Builders Supply Co., 399 S.W.2d 198, 201 (Tex.Civ.App.--Fort
Worth 1966, writ ref’d n.r.e.); that occupancy of property does not ipso facto make the
property a homestead, Sanchez, 960 S.W.2d at 770; Purdin v. Jenkins, 337 S.W.2d 418, 421
(Tex.Civ.App.--Dallas 1960, no writ); and that the word “home” is not necessarily
synonymous with “homestead.” Sanchez, 960 S.W.2d at 770; West v. Austin Nat’l Bank, 427
S.W.2d 906, 912 (Tex.Civ.App.--San Antonio 1968, writ ref’d n.r.e.).
           It must also be noted that a court may not assume facts to support a claim of
homestead against the validity of an existing debt or lien. Sanchez, 960 S.W.2d at 771;
Hilliard, 399 S.W.2d at 200.
           Turning to the evidence presented in the record, we find that the evidence is
unequivocal. Appellant had not nor could she have claimed the property in question as her
homestead at the time of the loan, the execution of the Deed of Trust on her behalf, or of the
filing of the lien. The lien clearly predates the existence of any homestead claim, and as
such, is valid and enforceable and cannot be defeated by the subsequent claim of homestead
by Appellant. Further, the Deed of Trust contains two paragraphs of significance to our
determination. In Article VI-Borrower’s Representations, Warranties, Covenants, and
Agreements, paragraph 6.02 provides:
TITLE TO PROPERTY AND LIENS OF THIS INSTRUMENT. Borrower
has good and indefeasible title to the Land and the Improvements and good
and marketable title to the Personal Property, free and clear of any liens,
charges, encumbrances, security interests, and adverse claims whatsoever,
except as otherwise provided herein. If the interest of Lender in the Property
or any part thereof shall be endangered or shall be attacked, directly or
indirectly, Borrower authorizes Lender, at Borrower’s expense, to take all
necessary and proper steps for the defense of such interest, including the
employment of attorneys, the prosecution or defense of litigation, and the
compromise or discharge of claims made against such interest. 

Paragraph 6.25 provides the following representations:
 
NON-HOMESTEAD. Borrower warrants and represents to Lender that the
Property is not the business or residential homestead of Borrower or any other
person, Borrower has no present intent to occupy in the future or use or claim
in the future the Property either as business or residential homestead.

           As stated previously, the Deed of Trust was signed by Reydesel Dominguez and
notarized, pursuant to the power of attorney granted to him by Appellant, and the document
is binding on Appellant. It is clear the representations included are precisely the type of
representations contemplated by our Constitution and as such could be relied upon by
Appellee. We also observe that Appellant did not present any written evidence reflecting her
formal designation of the property in question as her homestead. We overrule Appellant’s
Issue No. Two.
           Appellant’s Issue Nos. Three through Six complain of Appellee’s conduct in
connection with his letters sent in 2002 and his attempted foreclosure of the property. 
Appellant asserts the procedure followed by Appellee violated various statutes dealing with
the collection of debts. We note that the trial court granted Appellant’s request for a
Temporary Restraining Order halting the September 3, 2002 foreclosure sale. A full trial on
the merits of the case was held on January 9, 2004. We also note that Appellant did not
request any findings of fact or conclusions of law on the issues complained of. Any possible
error was mooted by the entry of the Temporary Restraining Order halting any collection
efforts on the part of Appellee and the subsequent trial on the merits. We further hold that
any error, if it existed, was waived by Appellant’s failure to request findings of fact and
conclusions of law. Accordingly, we overrule Appellant’s Issue Nos. Three through Six.
           Having overruled all of Appellant’s issues on appeal, we affirm the judgment of the
trial court in its entirety.
 
                                                                  RICHARD BARAJAS, Chief Justice
May 5, 2005

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.
Larsen, J., not participating