**In re Santiago NERIOS and wife, Benita Nerios, Debtors.**

**Bankruptcy No. 594–50133–7.**

United States Bankruptcy Court, N.D. Texas, Lubbock Division.

Sept. 2, 1994.

Bruce Magness, Lubbock, TX, for debtors.

Max R. Tarbox, Lubbock, TX, for trustee.

## MEMORANDUM OF OPINION ON HOMESTEAD EXEMPTION

JOHN C. AKARD, Bankruptcy Judge.

This case calls for a determination of the validity of the homestead exemption claimed in a Chapter 7 case. Santiago Nerios and wife, Benita Nerios (Debtors) filed for relief under Chapter 7 of the United States Bankruptcy Code[1] on February 28, 1994. The Debtors claimed their homestead exemption pursuant to the Texas Property Code. On April 21, 1994, the Trustee filed an objection. The Trustee specifically objects to the claimed exemption of two tracts of real property and two separate homes located adjacent to each other at 302 Vernon and 304 Vernon, Lubbock, Texas.[2]

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

2. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and

Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core pro-

## FACTS

The Debtors purchased and began residing in the house at 304 Vernon in 1968. In 1978, the Debtors purchased the house next door at 302 Vernon. They rented it out for several months. Subsequently, Mrs. Nerios' mother, sister, and several of her sister's children moved into the house during 1978 and lived there until 1984. At that time, Mr. Nerios' brother and his family moved into the house and lived there until 1989. Mrs. Nerios' sister and her son returned to the house and lived there from 1989 until 1992. Therefore, while the house at 302 Vernon was used as a residence by various relatives of the Debtors from 1978 until 1992, the Debtors never lived in the house during this time.

In 1992, the Debtors experienced marital difficulties and Mrs. Nerios moved to a separate residence for a three-month period, taking along her sister and nephew. After this separation, the Debtors reconciled but have found that their marriage is better facilitated by maintaining separate residences. Therefore, after the reconciliation, Mrs. Nerios moved into the residence at 302 Vernon and Mr. Nerios remained in the 304 Vernon house. From the summer of 1992 until the filing of the bankruptcy petition on February 28, 1994, Mr. Nerios and his son lived in the residence at 304 Vernon. Mrs. Nerios, her sister, and her sister's son lived at 302 Vernon, while the Debtors' daughter and her child lived in a small house located behind the house (on the same tract) at 304 Vernon. The meals for the family are prepared and served by Mrs. Nerios at 302 Vernon. The evidence indicates that Mrs. Nerios' sister and nephew were dependent upon the Debtors for their support due to mental problems and handicaps. In addition, the Debtors' children, while above the age of majority, are also dependents of the Debtors.

## DISCUSSION

■ The Debtors elected to claim their exemptions under Texas law as is allowed in 11 U.S.C. § 522(b)(2)(A). Since they chose the state exemptions, the bankruptcy court must look to state law for an interpretation of state homestead exemption rights. *In re Barnhart,* 47 B.R. 277 (Bankr.N.D.Tex.1985). Therefore, the issue to be decided is whether both houses may be exempted as the Debtors' homestead under the Texas homestead exemption codified at TEX.PROP.CODE ANN. § 41.002 (Vernon Supp.1994).

■ The party claiming the homestead exemption has the burden of establishing the property's homestead character. *NCNB Texas Nat'l. Bank v. Carpenter,* 849 S.W.2d 875 (Tex.App.—Fort Worth 1991, no writ). Also, the homestead claimant has the burden of proof as to every fact essential to the existence of the asserted homestead. *Bank of San Antonio v. Renaldo,* 626 S.W.2d 318 (Tex.Civ.App.—Eastland 1981), *rev'd on other grounds,* 630 S.W.2d 638 (Tex.1982). The Debtors claim the homestead exemption and, therefore, they bear the burden of proof in this case.

The two residences in question are indisputably urban in nature as both are located within the city limits of Lubbock, Texas. The Texas homestead exemption distinguishes between an urban and a rural homestead. The Texas Property Code defines an urban homestead as follows:

> If used for the purposes of an urban home or as a place to exercise a calling or business in the same urban area, the homestead of a family or single, adult person, not otherwise entitled to a homestead, shall consist of not more than one acre of land which may be in one or more lots, together with any improvements thereon.

TEX.PROP.CODE ANN. § 41.002(a) (Vernon Supp.1994). The court accepts that the two properties in question are both urban in nature, are located on two separate adjacent lots, were purchased at separate times and, taken together, do not exceed one acre. In addition, the court will accept on its face the fact that the residences are both used by the family, although that family is somewhat extended in this case. However, the court need not address the family issue as this decision is based upon grounds that do not require the court to address it. At issue is the determination of whether the Debtors'

ceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(B).

urban homestead may be comprised of both residences.

In order to determine whether the two separate houses constitute the Debtors' urban homestead, the court looks to Texas case law to determine what is meant by "homestead." "A homestead is the dwelling house constituting the family residence, together with the land on which it is situated and the appurtenances connected therewith." *Gann v. Montgomery*, 210 S.W.2d 255, 258 (Tex. Civ.App.—Fort Worth 1948, writ ref'd n.r.e.) (citation omitted). "The exemption is, in terms, *of lots or acres of land;* but the object was to secure to the family a home. 'House' is necessarily embraced in the word 'homestead'." *Cullers v. James*, 66 Tex. 494, 1 S.W. 314, 315 (1886) (citation omitted). "The idea of a homestead carries with it a place of residence, a domicile, and all property used in connection with the residence, such as a place of business, garden, garage, office, or shop, must be located at the place of residence." *Rockett v. Williams*, 78 S.W.2d 1077, 1078 (Tex.Civ.App.—Dallas 1935, writ dism'd). These cases all refer to the residence or house in singular terms, implying that the homestead is meant to be comprised of only one residence.

This interpretation is supported by Texas case law spanning over 100 years. The Supreme Court of Texas stated in 1891 in *Achilles v. Willis*, 81 Tex. 169, 16 S.W. 746 (1891), that the head of a family is not entitled to two residence homesteads. In *Wootton v. Jones*, 286 S.W. 680 (Tex.Civ.App.—Austin 1926, writ dism'd), the court stated that "a man may have two or more residences at the same time, but he cannot have more than one homestead." *Id.* at 687. Finally, the court in *Calvin v. Neel*, 191 S.W. 791, 795 (Tex.Civ.App.—Fort Worth 1916, writ ref'd), expressed in its opinion "[w]e do not understand it to be the law that a person may claim residential homestead rights in two separate and distinct premises." Nothing found in more current case law indicates any change in this line of reasoning. On the contrary, recent cases support the Fort Worth court's holding. *See e.g., First Nat'l Bank Mansfield v. Nelson*, 134 B.R. 838 (Bankr.N.D.Tex.1991) (stating that an individual may have only one residential homestead at any given time.)

Therefore, it is clear that a claimant may have only one homestead at a time and, apparently, it is not intended to include two separate residences located on different lots. (However, it should be noted that the purchase of a lot on which two houses have been constructed, followed by the occupancy of one, may support a finding that both structures are homesteads. *Tolman v. Overstreet*, 590 S.W.2d 635 (Tex.Civ.App.—Tyler 1979, no writ)).

■ Counsel for the Debtors, in the Memorandum of Points and Authorities, states "[t]he problematic fact ... may well be that there are two or more dwellings, or houses, located on the two lots in this case, and this seems to run contrary to declarations such as that in *In re Nelson* ... that an individual can have only one residence homestead at a time." However, he argues that the cases do not address what may constitute the residence homestead or urban homestead. Further, Debtors base their argument on the premise that "a 'family unit'—using whatever improvements are located on the real estate lot or lots—so long as they do not exceed a total of one acre—qualifies for an urban homestead exemption under Texas law." Thereby counsel concludes the house at 302 Vernon is merely an improvement appurtenant to the residence homestead at 304 Vernon. This conclusion cannot be supported by the Texas case law. The Trustee suggests that if these Debtors are successful in claiming two houses as their exempt homestead, it will become a common practice for spouses to claim two homesteads in bankruptcy cases.

The Debtors offer no authority for the proposition that the improvements to an urban homestead may include a second residence located on a separate lot. The court has found no authority supporting this view. A fair reading of the Texas Homestead Exemption statute is that it allows an exemption for only one residence. This view is supported by *Archibald v. Jacobs*, 69 Tex. 248, 6 S.W. 177 (1887), which stated that there could not be two places of residence for the family, separate and in no way used together. These two residences are separate, and in

the eyes of this court, the fact that the Debtor's marriage is better facilitated by maintaining separate residences is not sufficient to show that the houses are used together.

## CONCLUSION

As previously stated, the homestead exemption claimant has the burden of establishing the homestead character of the property. The Debtors have failed to meet their burden to establish that the second residence at 302 Vernon is part of their urban homestead. Texas courts have always given a liberal construction to the Constitution and Statutes to protect the homestead rights. "However, the courts cannot protect that which is not a homestead." 210 S.W.2d 255, *supra* at 258 (quoting *Whiteman v. Burkey*, 115 Tex. 400, 282 S.W. 788 (1926)). It has not been proved that the residence at 302 Vernon is a homestead. Therefore, the court cannot rely upon a liberal construction of state law to uphold the claimed exemption. The objection of the Trustee is sustained and the homestead exemption claimed on the property at 302 Vernon is denied.[3]

---

3. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Fed. R.Bankr.P. 7052 which is made applicable to Contested Matters by Fed.R.Bankr.P. 9014. This Memorandum will be published.